# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>v.<br><br>LUIS GAETA-GALVEZ,<br><br>                Defendant. | Case No. 18-CR-134-JPS<br><br>**ORDER** |

**1.    INTRODUCTION**

Defendant was indicted on June 19, 2018 for having returned to this country after being deported in 2010. (Docket #1). He filed a motion to dismiss the indictment on August 14, 2018. (Docket #11). On October 10, 2018, after taking briefing on the motion, Magistrate Judge David E. Jones issued a report and recommendation to this Court (the "Report") recommending that the motion be denied. (Docket #19). Defendant objected to the Report and the objection is now fully briefed. For the reasons explained below, the Court agrees that the motion must be denied.

**2.    RELEVANT FACTS**

Defendant was born on July 8, 1986, in Jalisco, Mexico. (Docket #13 at 1). He unlawfully immigrated to the United States at age seventeen to live with his brother and sister-in-law in Milwaukee. *Id.* at 2. On September 10, 2009, the Department of Homeland Security ("DHS") served Defendant with a Notice to Appear ("NTA") for removal proceedings. (Docket #11-1). The NTA stated that Defendant was subject to removal because he was a non-citizen who entered the country without official approval. *Id.* The NTA ordered Defendant to appear before an immigration judge in Chicago on "a

date to be set" and at "a time to be set" to show cause as to why he should not be removed. *Id.* Defendant says that he later received a notice from the immigration court itself which provided the precise date and time of his hearing. (Docket #11 at 2).

The show cause hearing was held on June 14, 2010. (Docket #11-2). Defendant appeared at the hearing and sought permission to voluntarily depart the country. *Id.* The court issued an order that day granting Defendant's request and setting a deadline of November 12, 2010 for him to leave. *Id.* If he failed to do so, the order would automatically convert into an order of involuntary removal to Mexico. *Id.* Defendant waived his right to appeal the order. *Id.*

Defendant claims that he left the country prior to the November 12 deadline. (Docket #11 at 2). However, a form from the U.S. consulate in Ciudad Juarez indicates that Defendant departed on November 13, 2010 by taxi from El Paso. (Docket #11-3). Even though Defendant was no longer physically present in the country, his purported failure to depart by the November 12 deadline triggered the removal provision of the immigration court's order. Thus, on November 15, 2010, DHS issued a warrant of removal for Defendant to be detained and removed if found in the U.S.

Defendant nevertheless returned to the country and to the Milwaukee area specifically. On January 28, 2018, Defendant was arrested in the Village of East Troy for operating a vehicle while intoxicated and for possession of cocaine. (Docket #13 at 3-4). A few months later, he was taken into custody by Immigration and Customs Enforcement. *Id.* at 4. On June 19, 2018, a grand jury in this District indicted Defendant for illegally re-entering the country after being ordered removed, in violation of 8 U.S.C. § 1326(a). (Docket #1).

3. **PROCEDURAL BACKGROUND**

Defendant's sole argument for dismissal presented to Magistrate Jones was that the underlying immigration court proceedings were void for lack of jurisdiction. Because this was a purely legal question, Defendant did not request, and Magistrate Jones did not conduct, an evidentiary hearing on the motion. On October 10, 2018, Magistrate Jones issued the Report recommending that Defendant's motion be denied. (Docket #19). Defendant timely objected. (Docket #20). After receiving the parties' briefing on the objection, this Court ordered the parties to provide additional briefing on an additional argument raised by Defendant. (Docket #25). As discussed further below, the parties did not see fit to comply with that order, and so the briefing remains incomplete. Regardless, the time is now ripe to address the Report and Defendant's motion.

4. **STANDARD OF REVIEW**

When reviewing a magistrate's recommendation, the Court is obliged to analyze the recommendation *de novo*. 28 U.S.C. § 636(b)(1)(C). Thus, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* In other words, the Court's *de novo* review of Magistrate Jones' findings and recommendations is not limited to his legal analysis alone; rather, the Court may also review his factual findings, and accept, reject, or modify those findings as it sees fit based upon the evidence. *Id.*

5. **ANALYSIS**

In his objection, Defendant offers two arguments in favor of dismissal of this case. The first is the same legal argument he presented to Magistrate Jones. The second is a factual argument based on his contention

that he left the country prior to his November 12 deadline. The Court will address the contentions separately below.[1]

### 5.1 Legal Argument

Section 1326 makes it a crime for a person to enter the United States while an order of removal is outstanding against the person. 8 U.S.C. § 1326(a). The statute further provides that those prosecuted under it may not challenge the validity of such a removal order in their criminal proceedings unless the person establishes:

> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

*Id.* § 1326(d). Defendant's legal argument is directed solely at his underlying removal proceedings, and so Section 1326(d)'s requirements apply to him.

---

[1] In his objection to the Report, Defendant states that he seeks to incorporate by reference his arguments presented in the briefing submitted to Magistrate Jones. (Docket #20 at 1 n.1). Objections to a magistrate's report and recommendation must be specific and limited to those issues upon which the objector disagrees with the magistrate's analysis. Fed. R. Crim. P. 59(b)(2); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999) (the objecting party must "specify each issue for which review is sought"). The report and objection process is, in essence, treated as an appeal. *See Coleman v. City of Ind.*, No. 1:17-CV-01561-JMS-MJD, 2018 WL 2093654, at *2 (S.D. Ind. May 7, 2018). Permitting a party to incorporate his original briefing into his objection briefing by reference defies the logic of this procedure, turning the objection process into a simple do-over before a different judge. Such incorporation would, of course, never be allowed by an appellate court. Here, Defendant's procedural foible matters little, as the objection covers essentially identical ground as the original motion. However, counsel should refrain from attempting to incorporate pre-objection briefing in any future cases in this branch of the Court.

Defendant's argument for dismissal is simple. He maintains that an immigration court only obtains jurisdiction over removal proceedings when a valid NTA is filed. He claims that, according to 8 U.S.C. § 1229(a), a valid NTA must include the time and location of the removal proceedings. This contention is based on the Supreme Court's recent opinion in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). *Pereira* held that under Section 1229(a), a document which does not contain the time and date of the removal hearing is not a "notice to appear." *Id.* 2113–14. Because Defendant's NTA did not contain this information, he asserts that the immigration court never obtained jurisdiction over his removal proceedings. A lack of jurisdiction renders Defendant's removal proceedings, and the resultant removal order, void. Without an outstanding order of removal, the government cannot now charge Defendant with unlawfully re-entering the country.

As couched within the requirements of Section 1326(d), Defendant argues that he need not comply with the exhaustion of remedies and judicial review requirements because his immigration proceedings were entirely void for want of jurisdiction, a non-waivable defect. Similarly, Defendant contends that the entry of the removal order was fundamentally unfair. To demonstrate such unfairness, Defendant must show that "there was a due process violation and that he suffered prejudice as a result of the removal proceedings." *United States v. Baptist*, 759 F.3d 690, 695 (7th Cir. 2014). Defendant says that the lack of jurisdiction is an obvious due process violation, and he was clearly prejudiced by the removal order because he now faces prosecution and imprisonment as a result of its issuance.

The Report sidestepped the bulk of Defendant's legal argument. Magistrate Jones found that Defendant could not demonstrate prejudice as a result of the information omitted from his NTA. Defendant was provided

with the date and time of his hearing subsequent to the filing of the NTA. Indeed, he appeared at the hearing and agreed to voluntarily leave the country. In Magistrate Jones' view, Defendant's allegation of prejudice is too generalized. Rather, the specific problem with the NTA of which Defendant now complains had no real effect on his immigration proceedings. Thus, Magistrate Jones recommended denial of Defendant's motion because he failed to carry his burden to establish fundamental unfairness.

The Court need not consider the matter of prejudice because Defendant's legal argument is fatally flawed. Defendant's position rests on a conflation of the applicable statutes and regulations, combined with his effort to introduce *Pereira* into a field it did not intend to enter. The reasons for this conclusion are adroitly explained by the Ninth Circuit in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), an opinion issued less than one month ago. Karingithi offered the same jurisdictional argument as Defendant, though she did so in the context of an appeal of a decision of the Board of Immigration Appeals (the "BIA"). The Ninth Circuit affirmed the BIA's holding that the immigration court had jurisdiction over Karingithi's removal proceedings. The court began by discussing the statutory and regulatory framework which governs removal proceedings:

> The Attorney General has promulgated regulations governing removal proceedings, including when jurisdiction vests with the [immigration judge ("IJ")]. The relevant regulation, entitled "Jurisdiction and commencement of proceedings," dictates that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). A charging document is "the written instrument which initiates a proceeding before an

Immigration Judge," and one of the enumerated examples is a notice to appear. 8 C.F.R. § 1003.13.

Because both the regulation and a statutory provision, 8 U.S.C. § 1229(a), list requirements for the contents of a notice to appear, we consider whether their requirements differ, and if so, which authority governs the Immigration Court's jurisdiction. According to the regulation, a notice to appear must include specified information, such as "[t]he nature of the proceedings," "[t]he acts or conduct alleged to be in violation of law," and "[n]otice that the alien may be represented, at no cost to the government, by counsel or other representative." 8 C.F.R. § 1003.15(b). Importantly, the regulation does not require that the time and date of proceedings appear in the initial notice. *See id.* Rather, the regulation compels inclusion of such information "where practicable." 8 C.F.R. § 1003.18(b) (emphasis added). When "that information is not contained in the Notice to Appear," the regulation requires the IJ to "schedul[e] the initial removal hearing and provid[e] notice to the government and the alien of the time, place, and date of hearing." *Id.*

Section 1229(a) requires that "[i]n removal proceedings ... written notice (in this section referred to as a 'notice to appear') [ ] be given" to the noncitizen. The statute goes on to specify what information the notice must contain, and it largely mirrors the regulation's requirements with one significant difference: it requires, without qualification, inclusion of "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Notably, the statute is silent as to the jurisdiction of the Immigration Court. *See generally* 8 U.S.C. § 1229.

Karingithi argues that if a notice to appear does not state the time for her initial removal hearing, it is not only defective under § 1229(a), but also does not vest jurisdiction with the IJ. The flaw in this logic is that the regulations, not § 1229(a), define when jurisdiction vests. Section 1229 says nothing about the Immigration Court's jurisdiction. And for their part, the regulations make no reference to § 1229(a)'s definition of a "notice to appear." *See generally* 8 C.F.R. §§

> 1003.13–1003.14. If the regulations did not clearly enumerate requirements for the contents of a notice to appear for jurisdictional purposes, we might presume they *sub silentio* incorporated § 1229(a)'s definition. *Cf. Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation marks omitted)). But the plain, exhaustive list of requirements in the jurisdictional regulations renders that presumption inapplicable here. Not only does that list not include the time of the hearing, reading such a requirement into the regulations would render meaningless their command that such information need only be included "where practicable." 8 C.F.R. § 1003.18(b). The regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction. A notice to appear need not include time and date information to satisfy this standard. Karingithi's notice to appear met the regulatory requirements and therefore vested jurisdiction in the IJ.

*Id.* at 1159–60. The court then analyzed *Pereira* and its irrelevance to Karingithi's jurisdictional argument:

> To begin, *Pereira* dealt with an issue distinct from the jurisdictional question confronting us in this case. At issue was the Attorney General's statutory authority to cancel removal of "an alien who ... has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of" her application for relief. 8 U.S.C. § 1229b(b)(1)(A). Under the statute's "stop-time rule," the "period of ... continuous physical presence" is "deemed to end ... when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1). In *Pereira*, the Court acknowledged that it decided only a single, "narrow question": "If the Government serves a noncitizen with a document that is labeled 'notice to appear,' but the document fails to specify either the time or place of the removal proceedings, does it trigger the stop-time rule?" *Pereira*, 138

> S.Ct. at 2110. The Court held it did not, emphasizing multiple times the narrowness of its ruling. *See, e.g., id.* at 2110, 2113.
>
> *Pereira*'s analysis hinges on "the intersection" of two statutory provisions: § 1229b(d)(1)'s stop-time rule and § 1229(a)'s definition of a notice to appear. *Id.* at 2110. The stop-time rule is not triggered by any "notice to appear"—it requires a "notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1) (emphasis added). *Pereira* treats this statutory cross-reference as crucial: "the word 'under' provides the glue that bonds the stop-time rule to the substantive time-and-place requirements mandated by § 1229(a)." *Pereira*, 138 S.Ct. at 2117. There is no "glue" to bind § 1229(a) and the jurisdictional regulations: the regulations do not reference § 1229(a), which itself makes no mention of the IJ's jurisdiction. *Pereira*'s definition of a "notice to appear under section 1229(a)" does not govern the meaning of "notice to appear" under an unrelated regulatory provision.
>
> In short, *Pereira* simply has no application here. The Court never references 8 C.F.R. §§ 1003.13, 1003.14, or 1003.15, nor does the word "jurisdiction" appear in the majority opinion. This silence is hardly surprising, because the only question was whether the petitioner was eligible for cancellation of removal. *Pereira*, 138 S.Ct. at 2112–13. The Court's resolution of that "narrow question" cannot be recast into the broad jurisdictional rule Karingithi advocates.

*Id.* at 1160–61.

Defendant's argument is no different than Karingithi's, and it fails for the same reasons. The applicable regulations, not Section 1229, describe the jurisdiction of the immigration court. The NTA in Defendant's case complied with those regulations. The removal was, therefore, not void for want of jurisdiction. *Pereira* is irrelevant here for a number of reasons, but chiefly because its assessment of what constitutes a "notice to appear" under Section 1229 has no application to that same term as defined in the regulations.

### 5.2 Factual Argument

Defendant's fallback position is that, contrary to the statement on the consulate document, he left the country prior to his November 12, 2010 departure deadline. If this were true, the removal order would be improper and potentially subject to collateral attack. The Court must, however, reject this argument for two reasons. First, Defendant failed to raise it before Magistrate Jones, and in so doing waived the argument. *See Ice Glass Prints Fla., LLC v. Surprize LLC*, 2010 WL 1702195, at *4 (N.D. Ill. Apr. 27, 2010) (collecting cases).

Second, as noted above, Section 1326(d) limits a defendant's ability to collaterally attack the removal order underlying an illegal re-entry prosecution. *See* (Docket #23 at 1–2). In its order of November 27, 2018, the Court observed that it was not clear whether Defendant had complied with the requirements of Section 1326(d) with respect to his factual argument, and that the parties' briefing was inadequate to address that point. *Id.* at 2–4. It therefore ordered the parties to further brief the matter by filing simultaneous opening briefs and responses within fifteen days. *Id.* at 4.

For reasons unknown, the parties ignored the Court's instructions.[2] Instead, Defendant filed a motion to refer the case back to Magistrate Jones for an evidentiary hearing on his factual argument. (Docket #26). He insists that his factual argument does not actually disagree with any findings or orders of the immigration court, thus suggesting that he need not comply with Section 1326(d)'s provisions. This position is completely illogical. If

---

[2]The Court believed that it went without saying that its orders must be complied with. Apparently, it needs to reiterate that fundamental precept. The parties are required to abide by Court orders unless and until they seek, and are granted, relief from such orders. If counsel for the parties fail to comply with any future orders of the Court, in this or any other case, they risk sanction.

Defendant succeeds in showing that he left the country on or before November 12, 2010, this fact would stand directly contrary to the immigration court's outstanding order of removal. This is a quintessential collateral attack.

Defendant's motion for an evidentiary hearing (to which the government responded, and he filed no reply) fails to address compliance with Section 1326(d) as the Court ordered him to do, and as was his burden. *United States v. Arita-Campos*, 607 F.3d 487, 490–91 (7th Cir. 2010) (removal orders are presumed valid, and defendants bear a burden of proof to overcome this presumption). The motion must, therefore, be denied, and his factual argument must be rejected. The Court offers no opinion on the merits of the argument. Rather, Defendant's refusal to comply with Section 1326(d), the rules of procedure, and this Court's orders has prevented the Court from reaching the merits, whatever they might be.[3]

6. **CONCLUSION**

Defendant's legal argument for dismissal is fatally flawed, and he has not demonstrated an entitlement to collaterally attack his immigration proceedings on a factual basis. The Court will, therefore, overrule Defendant's objection to the Report, (Docket #20), adopt the outcome recommended in the Report as explained above, (Docket #19), and deny Defendant's motion to dismiss, (Docket #11). Defendant's motion for an evidentiary hearing will also be denied. (Docket #26). Finally, the parties

---

[3]This is indeed regrettable because, as the Court observed in the November 27 order, Defendant's circumstances do not appear to mesh well with the requirements of Section 1326(d). (Docket #23 at 3). The Court gave him a chance to explore that issue further in the additional briefing which was ordered, but he declined to take that opportunity.

are directed to notify the Court within ten days if they wish to proceed to trial or will resolve this case short of trial.

Accordingly,

**IT IS ORDERED** that Magistrate Judge David E. Jones' October 10, 2018 Report and Recommendation (Docket #19) be and the same is hereby **ADOPTED in its conclusion** as described in this Order, and that Defendant's objection thereto (Docket #20) be and the same is hereby **OVERRULED**; and

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss (Docket #11) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's motion for an evidentiary hearing (Docket #26) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the parties shall notify the Court within **ten (10) days** whether a trial will be necessary in this case.

Dated at Milwaukee, Wisconsin, this 1st day of March, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge